### GRAND AERIE, FRATERNAL ORDER OF EAGLES, v. BUCK et al.

(District Court, D. South Dakota.   March 7, 1922.)

No. 80.

1. **Beneficial associations** �köm5(1)—**Provision of constitution that on dissolution of subordinat lodge its property reverts to superior body held valid.**

   A provision of the constitution and laws of a fraternal order that, on abandonment or revocation of the charter of a subordinate lodge, its property should vest in the grand lodge, *held* valid and enforceable.

2. **Beneficial associations** �köm22—**Members held jointly and severally liable to superior body for property converted.**

   The persistent members of a fraternal lodge, who dropped all others from the rolls for the purpose, which they carried out, of abandoning the charter and dividing between them the proceeds of property held by the lodge, which under the laws of the order reverted to the grand lodge, *held* liable to the grand lodge jointly and severally for such proceeds.

In Equity.   Suit by the Grand Aerie, Fraternal Order of Eagles, against W. H. Buck and others.   Decree for complainant.

The constitution and laws of the Fraternal Order of Eagles provide that on abandonment or revocation of the charter granted to a subordinate aerie any property acquired and held by it shall become the property of the Grand Aerie.   Lake Park Aerie operated under such a charter and acquired title to certain real estate.   The membership having largely decreased, pursuant to resolution of the remaining members, the charter was abandoned, the property sold and the proceeds divided among such members.   On notice of the abandonment, the charter was revoked by the Grand Aerie, which also demanded title to the property.   This suit was brought against the members who shared in the division of the proceeds of the property when sold, to recover such proceeds.

Bailey & Voorhees, of Sioux Falls, S. D., for plaintiff.

Porter & Porter, of Madison, S. D., for defendants.

ELLIOTT, District Judge.   As indicated at the close of the taking of testimony, it seemed to the court that there could be no serious controversy as to the title to the property in question.   There is practically an entire absence of testimony that any other organization or person had any interest in the property, other than the Madison lodge.   This disposed, at the close of the trial, of any question of fact presented by the pleadings.

The question of notice to the members urged by the defendant is first one of contractual interpretation.   The constitution and laws of the Grand Aerie were binding upon Lake Park Aerie, and the method of revoking the charter and the property rights of all parties concerned is specifically provided.   Madison charter was revoked by the Grand Worthy President, his action was approved by the Board of Grand Trustees, and such action was reported to the next session of the Grand Aerie, and such revocation duly approved.

[1] I am of the opinion that any question as to the right to notice by the local organization, or the duty to give notice to its membership, is rendered entirely immaterial here, in view of the fact that the subordinate aerie at Madison was voluntarily disbanded, and the prop-

⊙⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

erty interests left purely one of construction and dependent upon the contract, the terms of which had brought them together. I am not unmindful of the tendency of the older cases to sustain the suggestion that it would be against public policy to have titles to property transferred as soon as charters are revoked, etc., but in the development of law controlling and governing the interests of constantly increasing organizations, such as we have here, the tendency has been to sustain these contracts and uphold the provisions of the constitution and laws of these organizations. A fair interpretation of the constitution and laws of this organization sustains the claim of the plaintiff that, in case of dissolution of a subordinate aerie by the revocation of its charter or by voluntary surrender of the charter, the property accumulated by the subordinate aerie becomes the property of the Grand Aerie.

I repeat, as suggested above, that both of these conditions appear in this record. The charter was revoked, and the local members voluntarily surrendered the charter. I am therefore of the opinion that the Grand Secretary, having received from the secretary of Lake Park Aerie notice that the local aerie had been disbanded, and thereafter, because of this fact, the Worthy Grand President having revoked the charter, the right to the possession and ownership of the property in question vested in the Grand Aerie. I therefore conclude that the plaintiff is entitled to recover of the defendants the amount admitted by the pleadings and shown by the proofs as the value of the property, $8,630.30, together with interest at 7 per cent. per annum.

[2] It is clear that those who assumed to keep this property, belonging to the plaintiff, deliberately dropped the membership from the rolls until it was reduced to a comparatively few persons, with the purpose of taking this property. They must have acted together with this common purpose in view. It was the joint and several action of these parties that constituted the wrong complained of by the plaintiff, and the defendants are jointly and severally liable for the misappropriation of this property, and therefore must jointly and severally respond to the plaintiff for their illegal action. What I have said, of course, does not apply to the defendant Fred Kurth, who was not a member of the local organization at the time of its dissolution.

You may prepare proper judgment, giving defendants an exception.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes